UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JACQUELINE R. HUMPHRIES, | |
| Plaintiff, | Civil Action No. 18-2936 (JMC) |
| v. | |
| KURT NEWMAN, *et al.*, | |
| Defendants. | |

### MEMORANDUM OPINION

Defendants Children's National Hospital, Kurt Newman, Elizabeth Hardesty, Alexander Cheri Rucker, Victor Renato Blythe, Julia Volciak, and Ashley Gardella move to dismiss pro se Plaintiff Jacqueline Humphries's lawsuit pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1). ECF 18. For the reasons discussed below, Defendants' motion is **GRANTED**, and this civil action is **DISMISSED** in its entirety. Accordingly, Plaintiff's motions for discovery, ECF 25; ECF 39, are also **DENIED**.

### I.    BACKGROUND

Plaintiff Jacqueline Humphries is the paternal grandmother of a child, L.H. ECF 1 at Page ID #4. At issue are Humphries's interactions with Defendant Children's National Hospital and its employees. L.H. was apparently placed in foster care some time after visiting Children's National in 2018, which Humphries blames Defendants for. *Id.* Although Humphries' allegations are difficult to follow, the Court has endeavored to summarize her claims. These facts are drawn from her complaint's allegations.

On October 2, 2018, Humphries discovered that L.H. had written a suicide note. *Id.* at Page ID #8. According to Humphries, the child wrote in the note that she wanted to kill herself because

1

she was around her stepfather too much. *Id.* That same day, L.H.'s school informed Humphries that her grandchild feared being picked up early by her stepfather and that the child wanted Humphries to pick her up instead. *Id.* Humphries alleges that her son—L.H.'s father—authorized Humphries to take the child from school to Children's National. *Id.*

After picking up L.H., Humphries called the hospital's emergency department. *Id.* A Children's National employee told Humphries to bring L.H. in for a suicide screening and that Defendant Elizabeth Hardesty, a social worker, could help them. *Id.* Humphries and L.H. arrived at Children's National. *Id.* Humphries alleges that she showed L.H.'s suicide note to Hardesty, and L.H. told the social worker that she had written the note because her stepfather scared her. *Id.* at Page ID #9.

Hardesty left the room, but she later returned with L.H.'s mother. *Id.* Humphries alleges that L. H.'s mother grabbed and slapped the child. *Id.* According to Humphries, she asked Hardesty to intervene, but Hardesty refused. *Id.* Instead, Hardesty allegedly told Humphries that she did not have any rights as a "[t]hird party" and called security on her. *Id.* Meanwhile, Humphries claims that L.H.'s mother slapped, squeezed, and shoved the child, who screamed for her grandmother to call her father. *Id.* Both L.H. and her mother left the room. *Id.* Humphries "sat down exhausted having to take Nitroglycerin patches to avoid a heart attack." *Id.* Sometime later, L.H.'s father arrived, and Humphries gave him the suicide note. *Id.* Humphries alleges that L.H. was subsequently diagnosed with depression. *Id.*

At some point after the events of October 2, someone at Children's National allegedly reported Humphries to Prince George's County Child Protective Services (CPS), a division of the county's Department of Social Services (DSS). *Id.* at Page ID #3-4. L.H. was later placed in foster care. *Id.* at Page ID #4.

2

Humphries sued Children's National and Hardesty, as well as hospital employees Kurt Newman, Alexander Cheri Rucker, Victor Renato Blythe, Julia Volciak, and Ashely Gardella. Humphries blames Defendants for L.H.'s placement in foster care, for making false allegations of "mental abuse and neglect," for failure to report child abuse, for surveilling her cell phone, and for falsely reporting that she had some mental injury. *Id.* at Page ID #1, 2-4, 9-10. The complaint alleges (1) discrimination based on race under 42 U.S.C. §§ 1981, 1982, and 1983; (2) discrimination based on religion in violation of her "Right to Catholic Faith in Hospitals" and "42 USC 2000b Religious Freedom Act RFRA"; (3) discrimination based on disability per the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12101 et seq., and "ADA Section 504"; (4) failure to report child abuse in violation of 18 U.S.C. § 2258, 42 U.S.C. § 5106, and 18 U.S.C. § 3509; (5) state-law causes of action ("Conspiracy 42USC 242," "negligence," and "Defamation of Character"); and (6) miscellaneous statutory violations (D.C. Code Ann. §§ 2-1201.01, 2-1401.01, 12-301(4), and "§ 7.68.068"; Md. Code Ann., Fam. Law § 5-712; 42 U.S.C. § 2000e-3(a); and the "Human Rights act of 1974"). *Id.* at Page ID #1, 10.

## II.   LEGAL STANDARD

Defendants move to dismiss this case under Rule 12(b)(6), arguing that Humphries has failed to state viable claims, and Rule 12(b)(1), challenging this Court's jurisdiction over Humphries's state-law claims. ECF 18.

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A pro se complaint—"however inartfully pleaded"—is "held to less stringent standards" and must be "liberally construed." *Erickson v.*

3

*Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Further, the Court must consider a pro se plaintiff's filings "as a whole" before dismissing a complaint. *Schnitzler v. United States*, 761 F.3d 33, 38 (D.C. Cir. 2014). Even so, a pro se complaint must still "plead factual matter that permits the Court to infer more than the mere possibility of misconduct." *Atherton v. D.C. Off. of Mayor*, 567 F.3d 672, 681-82 (D.C. Cir. 2009) (internal quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 679)). Pro se or not, a court does not have to accept inferences drawn by a plaintiff if those inferences are unsupported by the facts alleged in the complaint; nor is a court required to accept a plaintiff's legal conclusions. *See Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).

Under Rule 12(b)(1), a court must dismiss a claim if it lacks subject-matter jurisdiction. The party invoking jurisdiction bears the burden of establishing it. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). So, when resolving a Rule 12(b)(1) motion, courts examine a complaint's factual allegations more closely than they would when deciding a Rule 12(b)(6) motion. *See Grand Lodge of Fraternal Ord. of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001).

### III. ANALYSIS

After liberally construing Humphries's allegations, the Court determines that Humphries has failed to state a claim upon which relief can be granted and that it lacks jurisdiction over her state-law claims. Humphries is clearly upset that her granddaughter was placed in foster care, but such child custody matters are handled by local, not federal courts. *See Bennett v. Bennett*, 682 F.2d 1039, 1043 (D.C. Cir. 1982) (expressing that Congress has "conspicuously" failed to enact

4

"any provision creating or recognizing a direct role for the federal courts in determining child custody"). Because Humphries has not alleged any viable claims against Defendants that are within the jurisdiction of this Court to resolve, her case is dismissed in its entirety.

### A. Defendants Newman, Rucker, Blythe, Volciak, and Gardella

Humphries's complaint alleges facts against only Children's National and Hardesty. Humphries mentions nothing in the complaint about Defendants Newman, Rucker, Blythe, Volciak, and Gardella and what she claims they did wrong. To that end, Humphries has failed to state any claim against these Defendants. The Court thus dismisses all claims against Newman, Rucker, Blythe, Volciak, and Gardella.

### B. Racial Discrimination

Humphries claims that she "suffered from Racial Discrimination" at Children's National "because she [is] Black" and further alleges that Children's National reported her to CPS after she "complained about their racial discrimination." ECF 1 at Page ID #3. She cites 42 U.S.C. §§ 1981, 1982, and 1983. *Id.* at Page ID #1.

The statutes that Humphries cites do not allow her to maintain her race-discrimination claim. Humphries, moreover, has failed to state any facts that would allow this Court to infer that Defendants' treatment of her was based on race.

Start with § 1981, which provides that all persons "shall have the same right . . . *to make and enforce contracts*, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, . . . ." § 1981(a) (emphasis added). Humphries does not identify any contractual relationship with Defendants. *See Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006) ("Any claim brought under § 1981, therefore, must initially identify an impaired 'contractual relationship' under which

5

the plaintiff has rights." (quoting § 1981(b)). Nor does she identify any other conduct by Defendants that would be covered by this statute. So Humphries has failed to state a claim under § 1981.

Turn now to § 1982, which guarantees the equal right "to inherit, purchase, lease, sell, hold, and convey real and personal property." Because Humphries does not claim that Defendants treated her unequally with regard to real or personal property, she has failed to allege a violation of this statute.

Now consider § 1983, which commands that persons may not act under color of state law to deprive others of their constitutional rights. Some state action must be at issue for a plaintiff to bring a § 1983 claim. *See West v. Atkins*, 487 U.S. 42, 49 (1988). Here, Humphries does not allege that Defendants are state officials or actors who are "jointly engaged with state officials in the challenged action." *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980). The complaint's allegations against Defendants are limited to L.H.'s and Humphries's interactions with Children's National employees and the hospital's reporting Humphries to CPS. Humphries does not suggest that any state actor influenced those decisions. Nothing in the complaint indicates that Defendants acted under color of state law, so Humphries has not alleged a violation of § 1983. *Cf. Blum v. Yaretsky*, 457 U.S. 991, 1005 (1982) (finding no § 1983 violation when alleged actions were made by "concededly private parties" and when there was "no suggestion that those [actions] were influenced in any degree by the State[]").

Beyond Humphries's failure to identify any statute that applies to her allegations, her compliant fails to include any assertions that support her conclusion that Defendants discriminated against her because of her race. She does not allege who purportedly discriminated against her, what they did, or why she suspects their actions were motivated by race as opposed to any other

6

reason. The Court cannot accept Humphries's conclusions and inferences when they are unsupported by any factual allegations. *See Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Therefore, any complaint of race discrimination against Defendants is dismissed.

### C. Religious Discrimination

Humphries also alleges that she was discriminated against for being Catholic. She asserts that she has a "Right to Catholic Faith in Hospitals" and cites "42 USC 2000b Religious Freedom Act RFRA." ECF 1 at Page ID #1. Humphries accuses Children's National of reporting her to CPS for telling L.H. "that writing a Suicide Letter was a Sin under GOD, and bugs would crawl over you is her Catholic Faith." *Id.* at Page ID #4.

As with her claims for race discrimination, Humphries has failed to allege any facts that indicate that Defendants' actions had anything to do with her religion or that Defendants otherwise burdened her religious exercise. Her complaint contains only her conclusion that she was discriminated against, but that is not enough to state a viable claim. And Humphries's factual allegations cannot sustain claims under her cited statutes.

Title 42 U.S.C. § 2000b (which Humphries cites) is not part of Religious Freedom Restoration Act of 1993 (RFRA), 42 U.S.C. §§ 2000bb-2000bb-4, or the Free Exercise Clause. Rather, § 2000b provides that the Attorney General can sue on behalf of someone who was denied equal use of public facilities based on their race, religion, or certain other protected characteristics. *See* § 2000b. Because Humphries is a private citizen—not the Attorney General—and because she does not claim that Children's National is a public facility, she cannot maintain a § 2000b claim.

Construing her pro se complaint liberally as alleging a violation of 42 U.S.C. § 2000bb-1, a section of RFRA, Humphries cannot maintain a claim under that section either. Section 2000bb-1 applies to only the "*Government*[*'s*]" burdens of persons' exercise of religion. § 2000bb-1

(emphasis added); *see also* § 2000bb-2(1), (2) (defining the term "government" as used in RFRA as including "a branch, department, agency, instrumentality, and official (or other person acting under color of law) of the United States, or of . . . the District of Columbia, the Commonwealth of Puerto Rico, and each territory and possession of the United States"). Humphries does not allege that Defendants are federal actors; nor does she claim that a "sufficiently close nexus" exists between Defendants and federal actors so that the formers' actions are "fairly treated" as that of the Government. *Village of Bensenville v. Fed. Aviation Admin.*, 457 F.3d 52, 62 (D.C. Cir. 2006) (quoting *Blum*, 457 U.S. at 1004). Humphries has thus failed to allege a RFRA violation.

Nor has Humphries alleged a violation of the Free Exercise Clause, which "forbids an *official* purpose to disapprove of a particular religion or of religion in general," specifically "*governmental* efforts" to benefit or disfavor a religion. *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 532 (1993) (emphases added). Again, Humphries does not allege that Defendants are state actors (which felled, in part, her racial-discrimination claim) or federal actors (which kneecapped her RFRA claim). Without establishing a nexus between Defendants and any state or the Government, Humphries has insufficiently alleged a free-exercise infringement. Her religious-discrimination claims against Defendants are dismissed.

### D. Disability Discrimination

Humphries also alleges discrimination based on disability. She cites the ADA generally and "ADA Section 504" specifically, ECF 1 at Page ID #1, which likely refers to Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794.

To state a claim under either the ADA or the Rehabilitation Act, Humphries must allege that she has or had "a physical or mental [disability] that substantially limits one or more major life activities of such individual" or is "being regarded as having such [a disability]." 42 U.S.C.

§ 12102(1); *see* 29 U.S.C. § 705(9)(B), 20(B) (incorporating definitions from 42 U.S.C. § 12102 into Rehabilitation Act); *see also Bragdon v. Abbott*, 524 U.S. 624, 631-32 (1998) (construing ADA as granting as much protection as accorded by the standards of the Rehabilitation Act and its implementing regulations per 42 U.S.C. § 12201).

Humphries cannot proceed with her disability-discrimination claim under either statute because she does not allege that she has or is regarded as having a disability. The only statement in the complaint that can be ascertained as remotely related to Humphries's condition is that she "sat down exhausted having to take Nitroglycerin patches to avoid a heart attack." ECF 1 at Page ID #9. This assertion is not sufficient. Humphries does not allege that she has any disability that substantially impedes major life activities; nor does she claim that anyone perceives as much.

Even if Humphries had sufficiently alleged an actual or perceived disability (which she has not), the complaint supplies no facts that give rise to the inference that Defendants' actions are associated in any way with Humphries's disability. Again, Humphries cannot just make accusations in a complaint without supplying the facts to back them up. Humphries has thus failed to state a claim of discrimination under the ADA or the Rehabilitation Act.

### E. Failure to Report Child Abuse

Humphries alleges that Defendants failed to report child abuse, invoking 18 U.S.C. § 2258, 42 U.S.C. § 5106, and 18 U.S.C. § 3509. ECF 1 at Page ID #1. These statutes do not provide a private right of action for Humphries to sue Defendants for allegedly failing to report the purported abuse of L.H. *See* 18 U.S.C. § 2258 (stating that persons who fail to report child abuse "shall be fined under this title or imprisoned" without providing civil causes of action); 42 U.S.C. § 5106 (governing Secretary of Health and Human Services's grants to state, tribal, and agency programs about child abuse); 18 U.S.C. § 3509 (supplying criminal procedure relevant to child victims and

witnesses). And, to the Court's knowledge, no other statute supplies such a private right of action. So Humphries cannot bring a claim of failure to report child abuse.

### F. State-Law Claims

Humphries's complaint includes fleeting references to various state-law causes of action. ECF 1 at Page ID #1, 10 (stating "Conspiracy 42USC 242"; "negligence"; "Defamation of Character"). Defendants contend that any state-law claims should be dismissed for lack of subject-matter jurisdiction. ECF 18 at Page ID #16.

Defendants are correct: this Court lacks subject-matter jurisdiction to consider state-law claims in this case. And even if Humphries could show that jurisdiction is satisfied here, she has insufficiently alleged facts to sustain any state-law causes of action.

The federal courts' original jurisdiction is circumscribed by the federal-question statute—which accords jurisdiction over civil actions "arising under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331—and the diversity jurisdiction statute—which grants jurisdiction over civil actions between parties of completely diverse citizenship in which the matter in controversy exceeds $75,000, *see* 28 U.S.C. § 1332(a). Once a plaintiff has established federal-question or diversity jurisdiction over a claim, a court may invoke supplemental jurisdiction to hear other claims that do not satisfy an independent basis for subject-matter jurisdiction. *See* 28 U.S.C. § 1367.

Again, Humphries has not adequately alleged racial discrimination, religious discrimination, disability discrimination, and failure to report child abuse. She has thus failed to state any claims "arising under" federal law. So this Court cannot use federal-question jurisdiction to invoke supplemental jurisdiction to consider Humphries's state-law claims.

10

Turning to diversity jurisdiction, Humphries—the party claiming diversity jurisdiction—must plead the completely diverse citizenship of *each* Party, plausibly allege that the amount in controversy is satisfied, and, if contested, prove the amount in controversy. *See Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014); *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978); *Bronner ex rel. Am. Stud. Ass'n v. Duggan*, 962 F.3d 596, 602 (D.C. Cir. 2020); *Bettis v. Montgomery*, 701 F. Supp. 256, 258 (D.D.C. 1989). Citizenship of a person is established by their domicile—their physical presence in a state and intent to remain there indefinitely. *See Prakash v. Am. Univ.*, 727 F.2d 1174, 1180 (D.C. Cir. 1984). A corporation is a citizen of the state where it was incorporated and the state where its principal place of business is located. *See* § 1332(c)(1).

Humphries's complaint lists her address as a P.O. Box in Maryland; avers that she resides in District Heights in Prince George's County, Maryland; and provides a District of Columbia address for Children's National. ECF 1 at Page ID #1-2. The complaint otherwise supplies no facts about her or any Defendants' citizenship. The Court notified Humphries of these deficiencies and ordered her to show cause why her state-law claims should not be dismissed for lack of subject-matter jurisdiction. ECF 42 at 2-3. In the Order, the Court instructed Humphries that she needed to provide information about the domicile for "every party, including herself and *each* defendant."). *Id.* at 2 (emphasis added). Humphries responded, but she stated only that a judge who previously oversaw this case "granted" her diversity jurisdiction based on her P.O. Box address, without providing the requested information. ECF 45 at 1, 3.¹

---

¹ To be clear, Humphries was never "granted" diversity jurisdiction. Humphries, as a pro se in forma pauperis plaintiff, was allowed to use her P.O. Box instead of her residential address for correspondence with this Court under D.C. Local Civil Rule 5.1. ECF 5.

The Court is sensitive to Humphries's pro se status and the barriers faced by self-represented parties. But Humphries has not met her mandatory burden of adequately pleading diversity citizenship, notwithstanding the second chance that she was given to do so. *See Novak v. Cap. Mgmt. & Dev. Corp.*, 452 F.3d 902, 906 (D.C. Cir. 2006) ("Citizenship is an essential element of federal diversity jurisdiction; failing to establish citizenship is not a mere technicality."). At bottom, neither her P.O. Box address nor her allegation of residence establishes Humphries's citizenship. *See id.* ("[A]n allegation of *residence* alone is insufficient to establish the *citizenship* necessary for diversity jurisdiction." (emphases in original) (quoting *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 792 n.20 (D.C. Cir. 1983))). Even after taking judicial notice of the hospital's business address, Humphries has supplied no facts about Hardesty's domicile. Humphries has thus not established that the Parties are completely diverse. Without diversity jurisdiction, this Court cannot wield supplemental jurisdiction to hear any state-law claims.

Even if this Court was satisfied that it had subject-matter jurisdiction, the complaint's skeletal citations fail sufficiently to allege any state law claim. Although Humphries points to 42 U.S.C. § 242 to sustain her conspiracy claim, that statute governs the Attorney General's studies of the use of narcotics and is unrelated to conspiracy. The federal conspiracy statute, 18 U.S.C. § 371, is a criminal provision and supplies no private cause of action. The complaint, moreover, supplies no facts relevant to common-law conspiracy principles. *See Beck v. Prupis*, 529 U.S. 494, 500-04 (2000) (outlining said principles). For Humphries's negligence claim to survive, Humphries must allege that Children's National owed her a duty, the hospital breached that duty, and the breach proximately caused her harm. *See McNeal v. Hi-Lo Powered Scaffolding, Inc.*, 836 F.2d 637, 641 (D.C. Cir. 1988). Nothing in the complaint relates to any of the three negligence elements. Put simply, the Court cannot identify any factual allegations that relate to conspiracy or

negligence; these claims must be dismissed. *Iqbal*, 556 U.S. at 678 ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." (formatting modified) (quoting *Twombly*, 550 U.S. at 555, 557)).

As for defamation, Humphries complains that her reputation suffered following Defendants' allegedly reporting her to CPS. ECF 1 at Page ID #4. Like with all her claims, Humphries merely concludes that she was defamed without supporting that claim with factual allegations. Further, under D.C. law, "[a]ny person, hospital, or institution participating in good faith in the making of a report pursuant to this subchapter [Reports of Neglected Children] shall have immunity from liability, civil or criminal, that might otherwise be incurred or imposed with respect to the making of the report." D.C. Code Ann. § 4-1321.04. This qualified privilege can be overcome with allegations that the reporter acted in bad faith. *See id.* From Humphries's assertions, however, the Court cannot infer any bad faith on Defendants' part. This Court thus refuses to pierce Defendants' cloak of immunity and must dismiss any defamation claim here.

To sum up, the Court lacks subject-matter jurisdiction to consider any state-law claims here, and Humphries has failed sufficiently to allege any violations of state law.

### G.  Miscellaneous Claims

The complaint cites violations of miscellaneous statutes, specifically D.C. Code Ann. §§ 2-1201.01, 2-1401.01, 12-301(4), and "§ 7.68.068"; Md. Code Ann., Fam. Law § 5-712; 42 U.S.C. § 2000e-3(a); and the "Human Rights act of 1974." ECF 1 at Page ID #1. None of these claims can be maintained here.

Sections 2-1201.01, 2-1401.01 and 12-301(4) of the D.C. Code establish no causes of action. *See* D.C. Code Ann. § 2-1201.01 (stating the D.C. Council's finding that the District suffers

from substantial and chronic unemployment and underemployment); *id.* § 2-1401.01 (stating the D.C. Council's intent to end discrimination); *id.* § 12-301(4) (setting one-year statute of limitations for certain crimes). The complaint's citation to "7.68.068" of the D.C. Code, ECF 1 at Page ID #1, likely refers to a repealed section of Washington's code. *See* Wash. Rev. Code Ann. § 7.68.068 (repealed 2015). As for section 5-712 of Maryland Code's family-law provisions, Humphries has not pleaded that L.H.'s purported abuse occurred in Maryland or, if the abuse occurred elsewhere, that L.H. lives in Maryland per that section's requirements. *See* Md. Code Ann., Fam. Law § 5-703(b). Nor is it clear why Maryland's Code would apply to this case. Title 42 U.S.C. § 2000e-3 pertains to only unlawful employment discrimination, which Humphries does not allege here. *See* § 2000e-3(a). The "Human Rights Act of 1974" might be another reference to section 2-1401.01, a provision of the District of Columbia Human Rights Act, D.C. Code Ann. §§ 1-2501-2-1404.04, or perhaps alludes to the Equal Educational Opportunities Act of 1974 (EEOA), 20 U.S.C. §§ 1701-1758. As explained above, section 2-1401.01 supplies no route to relief for Humphries. And, as the statute's title suggests, the EEOA governs equal opportunities in education, which is not implicated in the complaint. So none of Humphries's miscellaneous claims can be sustained here.

### H. Discovery

Humphries also moves for discovery. ECF 25; ECF 39. Because Defendants' motion to dismiss disposes of this entire case, these motions are denied.

### IV. CONCLUSION

To conclude, Humphries has failed to state a claim of racial discrimination, religious discrimination, disability discrimination, failure to report child abuse, or any state-law claim upon which relief can be granted. This Court also lacks subject-matter jurisdiction to hear any state-law

claims invoked in the complaint. Humphries cannot maintain her claims of miscellaneous statutory violations. Defendants' motion to dismiss, ECF 18, is thus **GRANTED**, and this civil action is **DISMISSED** in its entirety. Because Defendants' motion to dismiss disposes of this entire case, Humphries's motions for discovery, ECF 25; ECF 39, are **DENIED**.

    **SO ORDERED**.

    DATE: March 2, 2021

                                              Jia M. Cobb
                                      U.S. District Court Judge